IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Michael Wilson,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:19cv1526 (TSE/TCB)<br>) |
| Ericka Young, et al.,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Federal inmate Michael Wilson initiated this civil action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that federal officials at the Federal Correctional Institution in Petersburg, Virginia ("FCI-Petersburg") violated his rights under the Eighth Amendment by not providing him adequate medical care with respect to "degenerative changes to [his feet]," including "MTP joint" damage and "bone spurring." See [Dkt. Nos. 1, 3, 7, 10]. Plaintiff seeks an injunction: that relieves him from wearing the required institutional footwear; that requires the Federal Bureau of Prisons ("BOP") to issue him a special shoe pass that would allow him to wear a different shoe; that requires he be referred to a Podiatrist and new x-rays; and/or a requirement that the BOP purchase him a pair of wide shoes. [Dkt. No. 1 at 10]. The defendants filed a motion to dismiss and a motion for summary judgment, with a brief in support of the motions and copies of Plaintiff's medical records. [Dkt. Nos. 35-37]. Plaintiff received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 38], and he has responded. [Dkt. No. 41]. Plaintiff has also sought leave to amend his complaint to address arguments made by the

defendants' dispositive motions. [Dkt. No. 44]. Thus, the motions are ripe for disposition. For the reasons that follow, defendants' motion must be granted, and the plaintiff's motion denied.[1]

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, the Defendants have set forth a statement of material facts that defendants contend are undisputed. Plaintiff, however, did not submit a statement of undisputed and disputed facts as required by those Rules and, instead, has submitted an argument disputing the medical personnel's decision that he did not need special shoes. The following are the undisputed facts based upon review of the Defendants' motion for summary judgment and the unobjected to medical records.[2]

1. Plaintiff, Michael Thomas Wilson, a federal inmate housed at FCI-Petersburg, is currently serving a 210-month term of imprisonment imposed by the United States District Court for the Northern District of Indiana. His projected release date is February 24, 2025.

2. On October 16, 2017, Mid-Level Provider Crossley[3] at FCI-Petersburg requested an x-ray to "check for deformities to [Plaintiff's] feet" because Plaintiff had complained of pain and

---

[1] The named defendants are Mark Bolster, Negron, and Ericka Young. Defendant Negron is no longer employed at FCI-Petersburg and has not been served. In his response to the motions to dismiss and for summary judgment Plaintiff states that "given that Defendant Negron could not be located by the U.S. Marshall's Office ... the court can remove him from this suit without prejudice as provided under Federal Rule 4." [Dkt. No. 41 at 1]. Accordingly, Negron will be dismissed without prejudice because he has not been served in accordance with Rule 4.

[2] The complaint [Dkt. No. 1] and Plaintiff's other pleadings [Dkt. Nos. 3, 7, 10] are not sworn. Plaintiff's response to the motions to dismiss and for summary judgment is sworn. Under Fed. R. Civ. P. 56(c)(3), a court can refer to other materials in the record (as opposed to only cited materials) when deciding a motion for summary judgment. See United States v. Sims, 578 F. App'x 218, 222 (4th Cir. 2014) (district court may consider evidence that movant did not reference in its motion for summary judgment) (citing Fed. R. Civ. P. 56(c)(3); see, e.g., Green v. Northport, 599 F. App'x 894, 895 (11th Cir. 2015) (unpublished) (same); Ayazi v. United Fed'n of Teachers Local 2, 487 F. App'x 680, 681 (2d Cir. 2012) (unpublished) (same). Plaintiff's motion to amend is also sworn, but he does not contest any facts in that motion. [Dkt. No. 44].

[3] Mid-Level Provider ("MLP") is the BOP's title for Physician's Assistants and Nurse Practitioners. See Graham v. Aponte, 2009 U.S. Dist. LEXIS 7309, *3 (E.D. Va. Feb. 2, 2009).

2

stated that he had been "unable to stand in boots required on [the] compound." [Dkt. Nos. 37-1 at 2; 37-2 at 2]. Plaintiff's feet were x-rayed on November 8, 2017. [Dkt. No. 37-2 at 2-3]. The report on the x-rays of his right foot noted

> slight degenerative narrowing of the first MTP joint, and here is degenerative spurring along the superior articular margin of the head of the first metatarsal … [and] [v]ery minimal degenerative spurring is present along the posterior surface of the calcaneus. Impression: Degenerative changes in first MTP joint and minimal degenerative posterior calcaneal spurring, otherwise normal.

[Dkt. No. 37-2 at 2]. The "Findings/impressions" from the x-rays of his left foot were "Negative for fracture, dislocation, or articular abnormality. Except for very minimal degenerative spurring along the posterior aspect of the calcaneus, the exam is normal." [Id. at 3].

3. On December 18, 2017, FCI-Petersburg medical personnel saw Plaintiff. During the visit, he reported the required institutional boots caused him pain, but that he did not have pain on the weekends when he was not required to wear the institutional boots. [Dkt. No. 37-3 at 1]. MLP Crossley prescribed Elavil (amitriptyline tablet) for the pain, and informed Plaintiff he should follow-up at sick call as needed. Id.

4. On April 15, 2019, Ericka Young, D.O., then-Clinical Director at FCI-Petersburg, evaluated Plaintiff in FCI-Petersburg's chronic care clinic for "endo/lipid, GI [gastrointestinal], mental health, and pulmonary clinic." [Dkt. No. 37-4 at 2]. The records of the visit reference various medical concerns, including hyperlipidemia, thyroid issues, GERD, mental health issues, and asthma, and that Plaintiff "denie[d] any fatigue, weakness or muscle aches" but noted Plaintiff took Elavil for "neuropathy issues." [Id.]. The assessment portion of the clinical encounter notes that "Pain in [an] unspecified foot" was "[r]esolved." [Id. at 5]. The records do

not reflect any allegation of current foot pain during this encounter, and the notation "No" was entered next to the "Pain" category and that his "polyneuropathy" was stable. [Id. at 2, 5].[4]

5. On April 23, 2019, Plaintiff reported to sick call and stated to the medical provider that his shoes were "not working for him" and that he wanted an appointment with a podiatrist "for shoes." [Dkt. No. 37-5 at 2]. Plaintiff's feet were examined, with the following results:

Ankle/Foot/Toes

> Yes: Normal Exam, Full Range of Motion, Normal Bony Landmarks, Normal Active ROM, Normal Passive ROM
> No: Muscle Atrophy, Pitting Edema, Swelling, Tenderness, Decreased Range of Active Motion, Decreased Range of Passive Motion, Crepitus, Clicking

Ankle/Foot/Toes ROM and Tests

> Yes: Plantar Flexion, Extension, Dorsiflexion, Inversion, Eversion, Ambulating
> No: Anterior Drawer Sign

[Id.]. Plaintiff was told that the examination of his feet did not reveal any medical findings that indicated he needed special shoes, but that additional x-rays would be ordered. [Id.]. The medical records indicate Plaintiff understood the findings and was "satisfied." [Id.].

6. On May 16, 2019, Plaintiff commenced the BOP's administrative remedy process by

---

[4] The medical record of the April 15, 2019 notes Plaintiff's chief complaint was "Cardiac," and then summarizes Plaintiff's complaints and history.

> Patient has hyperlipidemia. He is stable on his meds. He denies any side effects. He has been complaint [sic] with his meds. He is trying to watch his diet and exercise.
>
> Patient has thyroid issues. He has been complaint [sic] with his meds. Last TSH was 1.4 5/2019. Patient denies any fatigue, weakness[,] or muscle aches. He does have neuropathy issues for which he takes Elavil for. He denies any side effects from the meds and the issue seems to be stable.
>
> Patient is here to follow up on his GERD. Overall, he is doing well[,] and he has no complaints. Patient is stable on meds and denies any side effects. He is trying to watch his weight and he stays active. Patient is complaint [sic] with his meds.
>
> Patient has mental health issues. He is currently taking Prozac and Buspar. Patient denies any side effects from the medications. He denies any suicidal/ homicidal ideation. Patient has seen psychology in the past, however, feels as if he is stable at this time. Patient reports appropriate coping mechanisms in place to deal with stress.
>
> Patient has mild intermittent asthma.

4

submitting an informal resolution request with staff regarding his "need" for "wide width shoes." He informed staff that "[his] feet are size 12.5 EEE, and have been x-rayed as deformed. I need access to podiatrist. Wide Width Shoes are not sold by bob barker."[5] [Dkt. No. 1-1 at 1]. Plaintiff requested that the medical providers be directed "to grant a podiatrist appointment and [give Plaintiff] a pass to wear [his] new-balance wide width shoes to prevent further foot damage and pain." [Id.].[6] Staff were unable to informally resolve the complaint, and Plaintiff was provided with a BP-9 form to formally pursue an administrative remedy on May 29, 2019. [Id.].

7. On June 26, 2019, Plaintiff submitted a formal request for an administrative remedy (BP-9) to the FCI-Petersburg Warden, requesting authorization to wear New Balance wide-width shoes. [Dkt. No. 37-6 at 7]. His request was denied on July 3, 2019. [Id.]. On July 18, 2019, Plaintiff appealed to the Regional Director for the Mid-Atlantic Region. [Id. at 8]. On August 6, 2019, the Regional Director denied his request. [Id.; Dkt. No. 1-1 at 3]. Finally, on August 25, 2019, Plaintiff's appeal to the General Counsel [Dkt. Nos. 37-6 at 8; 1-1 at 4], was denied on October 11, 2019. [Dkt. Nos. 37-6 at 8; 1-1 at 5].

8. On December 9, 2020, Plaintiff's feet were x-rayed a second time. The radiology report indicated that "ossification is normal for [his] left foot including the tarsal bones. There is no fracture, dislocation, or soft tissue swelling seen. No osteomyelitis is seen. Conclusion: Normal left foot." [Dkt. No. 37-7 at 2]. The report noted that "ossification is normal for [his] right foot, including the tarsal bones. There is no fracture, dislocation, or soft tissue swelling seen. No osteomyelitis is seen. Conclusion: Normal right foot." [Id.].

---

[5] The reference to "bob barker" refers to a company, Bob Barker Company, Inc., that sells correctional facilities supplies, including footwear. See https://www.bobbarker.com/ (last viewed Dec. 13, 2021).

[6] The date on the form is April 10th, but a handwritten notation indicates it was reviewed on May 16th.

## II. Standard of Review

Defendants have filed a motion to dismiss and a motion for summary judgment. A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the petition. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it states facts permitting the court to draw a reasonable inference that a defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 663.

In deciding a Rule 12(b)(6) motion, a court may consider (in addition to the complaint itself) matters of public record, items appearing in the record of the case, and exhibits attached to the Complaint. Bartlett v. Frederick County, Md., 246 F. App'x 201, 205 (4th Cir. 2007). Courts may also consider "documents incorporated into the complaint by reference," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), as well as exhibits attached to a motion to dismiss that are "integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. See id. at 324. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. Id. (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 256). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. See Anderson, 477 U.S. at 249-50. There must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. The

judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict. To ward off grant of the motion, a plaintiff is required to submit evidence of evidentiary quality (either admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine issue of material fact; evidence need not be in admissible form, but it must be admissible in content, in sense that change in form but not in content, would make evidence admissible at trial. See Celotex, 477 U.S. at 324.

### III. Analysis

The Defendants argue that Plaintiff is not entitled to injunctive relief in a Biven's action, the medical evidence demonstrates that Plaintiff has not established a claim of deliberate indifference, and that they are entitled to qualified immunity. Plaintiff's response admitted he seeks only injunctive relief and he conceded the claims against each defendant in their individual capacities should be dismissed [Dkt. No. 41 at 4],[7] but subsequently sought leave to amend his complaint to add an APA claim and a request for a writ of mandamus as well. [Dkt. No. 44 at 2] (citing "5 U.S.C. § 701/702 and also 28 U.S.C. § 1361). The motion to amend also seeks leave to clarify his complaint stating he is suing the defendants in their "official" rather than individual capacities. [Id.]. Plaintiff apparently believes amending his complaint will somehow defeat the motions to dismiss and summary judgment with his amendments, but neither amendment accomplishes his goal. Plaintiff also argues the defendants are not entitled to qualified immunity.

---

[7] Plaintiff raised the APA and mandamus arguments in opposition to defendants' dispositive motions. [Dkt. 41 at 2-3]. In reply, the Defendants correctly pointed out that Plaintiff could not amend his Complaint via his response to their dispositive motions and that therefore these claims were not properly before the Court. [Dkt. No. 42 at 3, note 1].

8

Regardless of the particular legal vehicle in which his underlying claim of inadequate medical care is raised, an Eighth Amendment claim relating to medical care in prison requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Thus, plaintiff must allege two distinct elements to support a claim. First, he must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Absent exceptional circumstances, a plaintiff cannot establish a cognizable deliberate indifference claim when there exists a mere disagreement between the plaintiff and the prison official over the proper medical care. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Hixon v. Moran, 1 F.4th 297, 303 (4th Cir. 2021) ("disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim").

Here, importantly, Plaintiff does not dispute his medical records. Indeed, he cites to the medical records that indicate the degenerative changes noted in the 2017 x-ray report "in first MTP joint" the "minimal degenerative posterior calcaneal [heel bone] spurring" and the medical providers decision to provide him with medication for his pain to support his assertion the defendants were deliberately indifferent. [Dkt. No. 41 at 6]. In essence, therefore, Plaintiff disagrees with the medical providers at FCI-Petersburg and such a disagreement does not establish a valid claim of deliberate indifference.

### A. Motion to Amend

The APA, 5 U.S.C. § 704, only permits judicial review of agency action when there is "no other adequate remedy in a court." Plaintiff clearly has an adequate remedy, which precludes relief via the APA. See, e.g., Jacobus v. Huerta, Case No. 3:12cv2032, 2013 U.S. Dist. LEXIS 60880, *46-47 (S.D. W. Va. Feb. 22, 2013) (dismissing APA claim because plaintiff could seek relief under Federal Torts Claims ACT or Bivens), adopted by 2013 U.S. Dist. LEXIS 57464 (S.D. W. Va. April 22, 2013), aff'd, 540 F. App'x 208 (4th Cir. 2013).[8] In any event, as indicated herein, the claim against the defendants has no merit, see, infra at 11-15, and allowing him to amend to include an APA claim would be futile.

The federal mandamus statute, 28 U.S.C. § 1361, authorizes a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A party seeking a court to issue a writ of mandamus, however, must establish that he has "no other adequate means to attain the relief he desires." Allied Chemical Corp. v. Daiflon,

---

[8] "Under Bivens and its progeny, a prisoner may bring a cause of action for damages under the Eighth Amendment's prohibition against cruel and unusual punishment for deliberate indifference to a serious medical need." Johnson v. United States, Case Nos. 1:16cv1097 and 1:17cv95, 2019 U.S. Dist. LEXIS 165438, *14 (E.D. Va. Sept. 24, 2019) (citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1864 (2017); Carlson v. Green, 446 U.S. 14 (1980); Doe v. Meron, 929 F.3d 153, 168 (4th Cir. 2019)), aff'd, 811 F. App'x 847 (4th Cir. 2020).

Inc., 449 U.S. 33, 35 (1980). Mandamus is a "drastic remedy" and r the party seeking a writ of mandamus has a "heavy burden" and must show that "he has no other adequate avenues of relief and that his right to the relief sought is 'clear and indisputable.'" In re Williams, 142 F. App'x 751, 752 (4th Cir. 2005) (quoting Mallard v. United States Dist. Court, 490 U.S. 296, 309 (1989)). Plaintiff has other avenues of relief and allowing Plaintiff to amend his complaint to add an APA claim and to seek a writ of mandamus would be futile. He has an adequate remedy, even if his claim has no merit. Rimmer v. Holder, 700 F.3d 246, 262 (6th Cir. 2012) (the adequacy of a remedy "does not depend on a party's ability to prevail on the merits"). Accordingly, the motion to amend will be denied.

*B. Defendant Bolster*

Plaintiff alleges Defendant Bolster, the Acting Warden, was deliberately indifferent to his need because he did not allow him to wear his personal shoes and denied his request for an appointment with a podiatrist and a soft-shoe pass. [Dkt. No. 1-1 at 3]. Even assuming that the medical personnel were deliberately indifferent to a serious medical need, however, Plaintiff has not established that Defendant Bolster was deliberately indifferent to him with regard to his footwear because Bolster reasonably relied on the medical staff's determination that Plaintiff did not require "special shoes." [Dkt. No. 1-1 at 3].

Defendant Bolster denied Plaintiff's request and that denial was upheld at both levels of appeal, which Plaintiff attached to his complaint. The first level appeal noted that Plaintiff's request had been denied because the April 23, 2019 examination "revealed no foot pain or gait abnormality" and "no indication [Plaintiff] require[d] special shoes. [Dkt. No. 1-1 at 3].[9] The second level appeal noted the medical personnel had found Plaintiff's feet had "no deformity"

---

[9] The medical records state that there were "no findings for special shoes." [Dkt. No. 37-5 at 2].

11

and that he did "not meet the criteria for a shoe pass." [Id. at 5].[10] Prison officials, such as Bolster, are entitled to rely on the opinions, judgment, and expertise of medical personnel. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); see, e.g., Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (affirming judgment as a matter of law on deliberate indifference claim for prison administrative officer who relied on medical opinions of doctors who had investigated inmate's complaint); Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants ... can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). It is not the function of prison administrators to second guess the good faith treatment decisions of licensed physicians. Shakka, 71 F.3d at 167. Although Plaintiff would have preferred soft-soled shoes, he was not entitled to his preferred treatment, only to adequate care. See Mansoori v. Moats, 827 F. App'x 595, 598 (7th Cir. 2020) (citing Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)).

    *C. Deliberate Indifference to a Serious Medical Need*

Defendants Bolster and Young both argue that based upon the undisputed medical records that Plaintiff has not established either deliberate indifference or that the he had or has a serious medical need. A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The Supreme Court has characterized the objective prong as "contextual," "responsive to

---

[10] Defendants also note that Plaintiff had x-rays taken after the present civil action was filed and that the results of that examination were that both of his feet were normal. [Dkt. No. 37-7].

contemporary standards of decency," and not a pass to "unqualified access to health care." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citations and quotation marks omitted). For purposes of this motion, however, the Court will assume that Plaintiff has a serious medical condition.[11] The record, however, refutes Plaintiff's assertion of deliberate indifference.

Plaintiff complained of unspecified foot pain on December 18, 2017 and was prescribed Amitriptyline Tablets for the foot pain [Dkt. No. 37-3 at 2], which he was still taking when he saw Defendant Young on April 15, 2019. [Dkt. No. 37-4 at 2]. Plaintiff's neuropathy was stable, he was told to continue with his medications, and Young renewed his prescription for Amitriptyline Tablets. [Id. at 5]; see also, supra note 4. On April 23, 2019, Plaintiff was seen by a different medical provider, who examined Plaintiff's feet because he had complained that his "shoes were not working for him" and Plaintiff wanted a "podiatry follow-up for shoes." [Dkt. No. 37-5 at 2]. Plaintiff complained that he had "Muscle/joint ache," but he did not complain about pain. [Id.]. After the examination, the provider explained to Plaintiff that there were "no findings" that warranted "special shoes," that the provider would order x-rays, and Plaintiff stated he understood and was "satisfied." [Id.]. Plaintiff has not disputed either the medical records or the conclusions of the medical providers, and he has offered no evidence that there was a medical necessity for special shoes. Instead, he argues that because he told the defendants he was in pain and the 2017 x-rays showed degeneration "in first MTP joint" the "minimal degenerative posterior calcaneal [heel bone] spurring" and argues that the instead of medication

---

[11] It is understandable why the Defendants do not concede this issue, and they have cited several cases from the Second Circuit on this point. See, e.g., Stevens v. City of N.Y., Case No. 12cv3808, 2013 U.S. Dist. LEXIS 2851, *8-9 (S.D.N.Y. Jan. 8, 2013), aff'd, 541 F. App'x 111 (2d Cir. 2013) (summary order) (courts in the Second Circuit "have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious" to meet the foregoing standards).

13

for his pain, that all the defendants needed to do was give him a "simple piece of paper." [Dkt. No. 41 at 9].

The undisputed medical records, however, indicate that Plaintiff did not meet the criteria for a referral to a podiatrist or a soft-shoe pass. Plaintiff, in essence, simply disagrees with the diagnosis. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim" absent exceptional circumstances. Wright, 766 F.2d at 849. Plaintiff cites Melton v. Wexford Health Sources, 2017 U.S. Dist. LEXIS 159560 (D. Md. Sept. 27, 2017), for the proposition that if a doctor prescribes medication for a condition that is sufficient to establish a serious medical need [Dkt. No. 41 at 6-7], which the Court is assuming for purposes of this motion and the defendants in Melton also did not dispute. Id. at 14 ("Defendants d[id] not dispute that Melton has a serious medical condition, specifically his chronic foot pain, which requires treatment. They deny, however, that they failed to treat it adequately and thereby acted with 'deliberate indifference' to a serious medical need"). It is unclear why Plaintiff would rely on Melton, however, because Melton does not support his deliberate indifference argument. To the contrary, while the court in Melton sympathized with Melton's frustration, the medical records demonstrated that the medical providers had examined Melton on several occasions, prescribed "medication, insoles, and therapeutic exercises intended to treat [his] pain," and concluded that there was no showing of deliberate indifference. Of particular significance to Plaintiff's case, Melton expressly held "the fact that Defendants did not follow Melton's requests for certain referrals or types of treatment," did not establish deliberated indifference "because '[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim' absent exceptional circumstances." Id. at 16-17 (quoting Wright, 766 F.2d at 849); Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison

officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."). The Fourth Circuit has held that even where "hindsight suggests" that a doctor's "treatment decisions may have been mistaken, even gravely so," that disagreement between and inmate and the medical providers "over the inmate's proper medical care ... fall short of showing deliberate indifference." Jackson, 775 F.3d at 178 (4th Cir. 2014) (citations omitted).

Because the defendants have established that there is no evidence on which a jury could reasonably find for Plaintiff on his claim of deliberate indifference, the defendants' other arguments do not need to be considered.

## VI.

For the reasons set forth above, Defendant Negron will be dismissed without prejudice, and Defendants' Bolster and Young's motion for summary judgment must be granted, and Plaintiff's motion to amend must be denied. An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to Plaintiff and to counsel of record for defendants.

Entered this 15th day of Dec. 2021.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge